IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
*Newport News Division*

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                                                       )<br>)<br>NOE MEDRANO NUNEZ,                       )<br>)<br>Defendant.                           ) | Case No. 4:25CR7 |

### **DEFENDANT'S RESPONSE IN OPPOSITION TO THE GOVERNMENT'S MOTION TO REVOKE RELEASE ORDER**

Noe Medrano Nunez, through counsel, hereby responds to the government's motion to review and revoke the release order entered in this case by United States Magistrate Judge Douglas Miller. The Court should deny the government's motion to revoke the release order and order Mr. Medrano be released pursuant to the release order imposed. First, as a preliminary matter, the Bail Reform Act did not authorize a detention hearing in this case because the government failed to carry its burden at the initial appearance to show that there was a serious risk that Mr. Medrano will flee. Second, even if a detention hearing was authorized, Magistrate Judge Miller correctly found that there were conditions of release that would reasonably assure the appearance of Mr. Medrano and the safety of the community. Mr. Medrano respectfully requests a prompt disposition as required by statute in order to avoid any further unlawful detention, as Mr. Medrano has been contesting his unlawful detention since his initial appearance on February 18, 2025.

### **PROCEDURAL BACKGROUND**

Mr. Medrano made his initial appearance before this Court on February 18, 2025. ECF No. 6. The government moved for his detention under 18 U.S.C. § 3142(f)(2)(A), claiming that there was a serious risk that Mr. Medrano will flee. The defense objected to the government's motion for detention and proffered evidence showing that Mr. Medrano did not pose a serious risk of flight.

1

In response, the government cited Mr. Medrano's criminal history and prior illegal reentries. Magistrate Judge Robert Krask found that the government carried its burden to show that Mr. Medrano posed a serious risk of flight. Thus, the Court detained Mr. Medrano on a temporary detention order until his detention hearing could be held.

A week later, Magistrate Judge Miller held the detention hearing. ECF No. 12. The parties proffered information, and the defense offered an exhibit. After hearing the evidence and argument from the parties, Magistrate Judge Miller found that there were conditions of release that could reasonably assure the appearance of Mr. Medrano and the safety of the community. Accordingly, Magistrate Judge Miller ordered that Mr. Medrano be released subject to electronic monitoring and a curfew.

The government then immediately filed its motion to review and revoke the release order and stay the release order pending review. ECF No. 14. So, Magistrate Judge Miller ordered a stay of his release order. ECF No. 15.

## LAW & ARGUMENT

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). This presumption of release is encapsulated in the Bail Reform Act in multiple ways. The statute mandates that a court "shall order" pretrial release, § 3142(b), except in certain narrow circumstances. The statute imposes a gatekeeping function at the initial appearance and authorizes a detention hearing only for certain cases. 18 U.S.C. § 3142(f). Then, for cases where a detention hearing is authorized, detention is warranted only if the government shows that no conditions of release would reasonably assure the appearance of the defendant and the safety of the community. 18 U.S.C. § 3142(e)(1). Under this statutory scheme, "it is only a 'limited group of offenders' who should be

detained pending trial." *United States v. Shakur*, 817 F.2d 189, 195 (2d Cir. 1987) (quoting S. Rep. No. 98-225, at 7 (1983), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3189).

At both the initial appearance and the detention hearing, the government failed to carry its burden to show that Mr. Medrano should be detained. First, the government failed to show that Mr. Medrano posed a serious risk of flight at the initial appearance, so no detention hearing was authorized under the Bail Reform Act. Second, at the detention hearing, the government failed to show that no conditions of release could reasonably assure the appearance of the defendant and the safety of the community. Accordingly, the Court should order that Mr. Medrano be released immediately.

**I.    The Bail Reform Act did not authorize a detention hearing because the government failed to carry its burden at the initial appearance to show that Mr. Medrano posed a serious risk of flight under § 3142(f)(2)(A).**

Congress has not authorized a detention hearing in every criminal case. *United States v. Salerno*, 481 U.S. 739, 747 (1987) (recognizing that "[t]he Bail Reform Act carefully limits the circumstances under which detention may be sought to the most serious of crimes."). The Bail Reform Act "imposes on the magistrate courts a gatekeeping function at initial appearance." *See United States v. Subil*, 2023 WL 3866709, at *4 (W.D. Wa. June 7, 2023).

According to the plain language of § 3142(f), "the judicial officer shall hold a [detention] hearing" only "in a case that involves" one of the seven factors listed in § 3142(f)(1) and (f)(2). Because Mr. Medrano is not charged with a § 3142(f)(1) offense, a detention hearing is only authorized if the government showed that there was a "serious risk that [Mr. Medrano] will flee." 18 U.S.C. § 3142(f)(2)(A). In this case, the government moved for detention at the initial appearance under § 3142(f)(2)(A), and the defense objected. The government has not carried its burden to show that there is a "serious risk" that Mr. Medrano will flee.

Citizenship status alone is not sufficient to show that an individual poses a serious risk of flight. *See United States v. Figueroa-Alvarez*, 681 F. Supp. 3d 1131, 1136–40 (D. Idaho 2023) (discussing § 3142(f) and the statistics of appearance rate by noncitizens). The Bail Reform Act requires an individualized analysis. *See United States v. Santos-Flores*, 794 F. 3d 1088, 1092 (9th Cir. 2015) ("The court may not [ ] substitute a categorical denial of bail for the individualized evaluation required by the Bail Reform Act").

It is clear that the standard provisions of the Bail Reform Act apply to cases involving aliens. A different subsection of the Act, § 3142(d)(1)(B), provides for the temporary detention of removable aliens "for a period of not more than ten days" if the court finds that the individual may flee or poses a danger to any other person or the community.  If the court fails to make such a finding, the court must treat the individual in accordance with the other provisions of the Bail Reform Act. 18 U.S.C. § 3142(d)(2). Likewise, if DHS "fails or declines to take such person into custody during that [ten-day temporary detention] period, such person shall be treated in accordance with the other provisions of [the Bail Reform Act]."  *Id.* The other provisions of the Act require release unless the government meets its heavy burden of showing the person presents an unmitigatable risk of flight.  Accordingly, § 3142(d) explicitly makes removable aliens subject to the Bail Reform Act's general standard for pretrial release and therefore implicitly authorizes their release on bond.

Where the government's only § 3142(f) ground for detention is "serious risk" of flight, the government bears the burden of establishing, by a preponderance of the evidence, that the defendant poses a "serious risk" of flight, rather than the ordinary risk attendant in any criminal case. *See United States v. Friedman*, 837 F.2d 48, 49–50 (2d Cir. 1988). At the initial appearance, a defendant "may be detained only if the record supports a finding that he presents a serious risk

4

of flight." *United States v. Himler*, 797 F.2d 156, 160 (3d Cir. 1986); *see also United States v. Robinson*, 710 F. Supp. 2d 1065, 1088 (D. N. Mar. I. 2010) (criticizing the government for failing to present evidence of "serious risk" of flight at the Initial Appearance and saying "no information was offered to support [the] allegation"); *United States v. White*, No. 3:21-MJ-04070, 2021 WL 2155441, at *7 (M.D. Tenn. May 27, 2021) (holding that "a court may not find that a case involves a serious risk of flight just because the Government claims it does, but rather must make its own determination on the issue").

After all, the statute authorizes detention only "in a case that involves" a "serious risk" that the person will flee. 18 U.S.C. § 3142(f)(2)(A). Ordinary risk of flight is not a permissible basis for detention; rather, the statute only authorizes detention if there is a "serious risk that [the defendant] will flee." *Id.*; *White*, 2021 WL 2155441 at *8. Risk of flight "is distinguishable from, and more narrow than, risk of non-appearance." *Figueroa-Alvarez*, 681 F. Supp. 3d at 1137. Flight must be intentional. *See White*, 2021 WL 2155441 at *8; *United States v. Cobix-Espinoza*, 655 F.Supp.3d 584, 588–89 (E.D. Ky. Feb. 9, 2023) (flight involves "voluntary action") (citing *United States v. Ailon-Ailon*, 875 F.3d 1334, 1338 (10th Cir. 2017)). On top of this, the risk of flight referenced in the Act is a "serious" risk of flight. "Serious" plainly means more than just a normal risk of flight; it conveys something greater. *See Figueroa-Alvarez*, 681 F. Supp. 3d at 1138. "Taken together, then, a 'serious risk of flight' under § 3142(f)(2)(A) is a great risk—beyond average— that the defendant will intentionally and actively move within or outside the jurisdiction to avoid court proceedings or supervision." *Id.* This showing of a serious risk of flight is required to even trigger a detention hearing under § 3142(f)(2)(A). *Id.* (collecting cases).

The government failed to carry this burden to demonstrate that this case involves a "serious risk" that Mr. Medrano will flee under § 3142(f)(2)(A). At the initial appearance, the government

5

moved for detention, claiming that Mr. Medrano posed a serious risk of flight under § 3142(f)(2)(A) without providing any explanation. The defense objected, arguing that citizenship status alone is not a basis for detention. The defense also argued that the fact that Mr. Medrano is charged with illegal reentry is not sufficient to warrant a detention hearing or else it would be listed as a categorical offense in § 3142(f)(1).

Then, the defense proffered information showing that Mr. Medrano did not pose a serious risk of flight. The defense proffered that Mr. Medrano has been residing in the Eastern District of Virginia with his seven-year-old son, that Mr. Medrano has physical custody of his son, that the mother of the son resides in this district too, and that Mr. Medrano had upcoming court dates in this custody litigation over the next few months.

In response, the government cited a few prior offenses from Mr. Medrano's criminal history, and in particular, his prior illegal reentries. The defense responded that the government failed to cite any failures to appear for any of these prior court settings and that the illegal reentries show Mr. Medrano's strong ties to the community, his desire to be here, and demonstrate that Mr. Medrano is not a flight risk. The government's scant proffer was not sufficient to carry its evidentiary burden to show that Mr. Medrano, as an individual, posed a serious risk of flight under § 3142(f)(2)(A). Thus, no detention hearing was authorized under the Bail Reform Act, and Mr. Medrano is therefore being detained unlawfully. Accordingly, Mr. Medrano must be released on bond immediately with appropriate conditions of release. *See* 18 U.S.C. § 3142(a)–(c).

**II. At the detention hearing, the magistrate judge correctly found that there were conditions of release that would reasonably assure the appearance of Mr. Medrano and the safety of the community.**

Under the Bail Reform Act, pretrial detention is authorized only if "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person

as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). "The Government must prove by a preponderance of the evidence that no combination of conditions will reasonably assure the defendant's appearance at future court proceedings, or by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person and the community." *United States v. Sanchez*, No. 1:15-CR-147, 2015 WL 3444840, at *1 (E.D. Va. May 28, 2015) (first citing *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001); and then *United States v. Simms*, 128 F. App'x 314, 315 (4th Cir. 2005)). If the government fails to meet this burden, then the Court must order a defendant released pursuant to conditions. Here, the government failed to carry its burden, and the magistrate judge correctly ordered that Mr. Medrano be released pursuant to conditions.

In determining whether any conditions of release would reasonably assure the appearance of the person as required and the safety of the community, the court must consider four factors: (1) "the nature and circumstances of the offense charged"; (2) "the weight of the evidence against the person"; (3) "the history and characteristics of the person"; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). As the magistrate judge correctly found, these factors did not demonstrate that no conditions of release could reasonably assure the appearance of the person as required and the safety of the community.

The evidence supports the magistrate judge's finding that conditions of release could reasonably assure the appearance of Mr. Medrano and the safety of the community. During the hearing, the defense offered an exhibit and proffered evidence. The exhibit—a study by the Department of Justice—provided illuminating statistics regarding the rate that noncitizens violate conditions of their release and fail to appear. ECF No. 16-1. The statistics show that,

7

overwhelmingly, these individuals abide by their conditions of release and show up when required, as reflected in the following table:

**TABLE 9**
**Defendants released pretrial with cases disposed in federal district courts, by type of release violation and demographic characteristics, FYs 2011–18**

| Demographic characteristic | Number of released defendants | At least one release violation | Failure to appear | Technical violation[a] | Rearrest for new offense[b] | Release revoked |
|---|---|---|---|---|---|---|
| Total | 241,164 | 18.9% | 1.0% | 17.2% | 2.1% | 10.5% |
| **Sex** | | | | | | |
| Male | 178,471 | 19.2% | 1.1% | 17.4% | 2.3% | 10.7% |
| Female | 61,285 | 18.1 | 0.9 | 16.8 | 1.6 | 10.1 |
| **Race** | | | | | | |
| White | 164,189 | 16.5% | 1.0% | 15.2% | 1.7% | 9.6% |
| Black | 56,805 | 25.4 | 1.1 | 22.7 | 3.5 | 12.8 |
| American Indian/Alaska Native | 6,230 | 35.2 | 1.4 | 32.9 | 3.2 | 23.9 |
| Asian | 7,030 | 12.3 | 0.8 | 11.2 | 1.2 | 5.0 |
| Native Hawaiian/Other Pacific Islander | 856 | 21.4 | 0.4 ! | 20.9 | 1.1 ! | 10.3 |
| **Ethnicity** | | | | | | |
| Hispanic | 81,572 | 13.8% | 1.3% | 12.6% | 1.3% | 8.3% |
| Non-Hispanic | 151,737 | 21.7 | 0.9 | 19.8 | 2.6 | 11.8 |
| **Citizenship status** | | | | | | |
| U.S. citizen | 195,609 | 21.8% | 0.9% | 20.0% | 2.5% | 12.1% |
| Documented non-U.S. citizen | 13,295 | 15.3 | 3.4 | 12.6 | 1.6 | 9.0 |
| Undocumented non-U.S. citizen | 28,472 | 2.0 | 0.5 | 1.6 | 0.2 | 1.1 |

Note: Sex was missing on 1,408 records, race was missing on 6,054 records, ethnicity was missing on 7,855 records, and citizenship status was missing on 3,788 records. Details may not sum to total due to missing data and because defendants could have more than one type of release violation. Not all violations resulted in revocation of pretrial release.
! Interpret with caution. Estimate is based on 10 or fewer cases.
[a] Includes a failed drug test, failure to maintain employment, and any other violation of conditional release.
[b] Includes felony and misdemeanor offenses.
Source: Bureau of Justice Statistics, based on data from the Administrative Office of the U.S. Courts, Office of Probation and Pretrial Services Automated Case Tracking System, fiscal years 2011–18.

*Id.* at 11 (highlight added). As these statistics from the DOJ itself show, only 0.5% of undocumented non-citizens released pretrial had a failure to appear. *Id.* Only 2% had a violation of any kind. *Id.* So, the DOJ's own study suggests that there are conditions of release that can reasonably assure Mr. Medrano's appearance as required.

However, the defense did not solely rely on these statistics. The defense also proffered information regarding Mr. Medrano's ties to the community, which show that conditions of release can reasonably assure his appearance. Notably, Mr. Medrano has been litigating a custody battle concerning his seven-year-old son, who has special needs. His son is what he lives for; he takes

8

him to school and to various programs for his special needs. Currently, Mr. Medrano has temporary physical custody of his son, and they live together in Hampton, where Mr. Medrano has been renting a house from Raul Flores for over a year. Mr. Flores said he has not had any issues with Mr. Medrano as a tenant; he keeps the residence spotless. Additionally, Mr. Medrano is hardworking. He does business as Medrano's Flooring, and Mr. Flores has worked with him in the past. Mr. Flores averred that Mr. Medrano is his first choice for contracting this work. Mr. Medrano has established a good reputation doing this work in his community.

Importantly, Mr. Medrano has two upcoming court dates in his ongoing child custody lawsuit as he fights to gain permanent custody of his son. He has a court setting in Newport News Circuit Court in May, and another court date in June in the Juvenile and Domestic Relations Court. Moreover, the defense proffered information about Mr. Medrano's appearance in court in this custody litigation. According to Mr. Medrano's lawyer in this custody case, Jeff Ambrose, Mr. Medrano is a "perfect client." He has attended every court date and meeting, and he returns any missed calls from his lawyer. As Magistrate Judge Miller seemed to recognize, a person trying to gain permanent custody of his son is unlikely to jeopardize this by failing to appear in court here.

Thus, Mr. Medrano has strong ties to his community, including family ties and employment, and has a demonstrated "record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A) (citing relevant considerations). As Magistrate Judge Miller correctly found, Mr. Medrano's custody litigation, pending court dates, and appearance for other court proceedings support a finding that conditions of release will reasonably assure his appearance at future court proceedings here.

Still, despite the DOJ's own statistics and Mr. Medrano's strong ties to the community, the government contends that no conditions of release can reasonably assure Mr. Medrano's

9

appearance. At the detention hearing, the government relied largely on two things: (1) Mr. Medrano's criminal history, arguing that it showed an inability to comply with court orders; and (2) the presence of an ICE detainer. However, these arguments are not enough to show that no conditions of release could reasonably assure the appearance of Mr. Medrano and the safety of the community.

First, the government's proffer regarding Mr. Medrano's criminal history is unpersuasive. In the government's proffer, the government essentially just recited the criminal history section of the bond report, listing the offenses, the dates, and their dispositions. However, many of the cited offenses had unknown dispositions, and the government failed to provide any explanation as to whether these offenses resulted in dismissals, convictions, alternative dispositions, or any other possible resolution. It did not appear that the government was arguing that Mr. Medrano's criminal history suggested that he posed any risk of danger to the community, and Magistrate Judge Miller remarked that he did not see any danger posed by Mr. Medrano, citing that his criminal history concerned mostly illegal reentries.

Rather, the government argued that this criminal history showed that Mr. Medrano has shown that he cannot abide by court orders. Magistrate Judge Miller carefully considered this argument but found that the history of illegal reentries overall shows Mr. Medrano's desire to be here and his strong ties to this community. Thus, Magistrate Judge Miller correctly found that the history of prior illegal reentries did not show that Mr. Medrano posed a risk of nonappearance. All in all, Mr. Medrano's criminal history does not show that no conditions of release could reasonably assure his appearance.

Second, the government also argued that the possibility of ICE removing Mr. Medrano demonstrates that Mr. Medrano poses a flight risk. However, this argument too should be rejected.

The government itself represented that a pending U-Visa application is preventing ICE from removing Mr. Medrano. According to the government, this is a reason that Mr. Medrano was being prosecuted here instead of merely being removed already; it is because ICE cannot remove him while this application is pending. Consequently, any argument that ICE will remove Mr. Medrano is belied by the government's own position.

Moreover, even if it were possible for ICE to remove Mr. Medrano, courts have rejected the exact same argument presented by the government, holding that the presence of an ICE detainer and the possibility of removal alone does not show that a defendant is unlikely to appear. *See Santos-Flores*, 794 F. 3d at 1092 (holding that a district court erred in relying on the existence of an ICE detainer and the probability of immigration detention and removal to find that no conditions or combination of conditions will reasonably assure a defendant's appearance). The Bail Reform Act demands an individualized analysis of the § 3142(g) factors to determine whether a defendant should be released on bond prior to trial. *See id.* ("The court may not [ ] substitute a categorical denial of bail for the individualized evaluation required by the Bail Reform Act").

Because § 3142(g) demands such an individualized analysis, courts cannot categorically deny bond to removable aliens solely on the basis of their immigration status or the existence of an immigration detainer. *See United States v. Sanchez-Rivas*, 752 F. App'x 601, 604 (10th Cir. 2018) (holding that defendant "cannot be detained solely because he is a removable alien"); *Santos-Flores*, 794 F.3d at 1092 ("We conclude that the district court erred in relying on the existence of an ICE detainer and the probability of Santos–Flores's immigration detention and removal from the United States to find that no condition or combination of conditions will reasonably assure Santos-Flores's appearance pursuant to 18 U.S.C. § 3142(e)."); *United States v. Barrera-Omana*, 638 F. Supp. 2d 1108, 1111 (D. Minn. 2009) (concluding that the mere presence

of an ICE detainer does not override Congress' detention plan in § 3142(g)); *United States v. Chavez-Rivas*, 536 F. Supp. 2d 962, 968 (E.D. Wis. 2008) ("[I]t would be improper to consider only defendant's immigration status, to the exclusion of the § 3142(g) factors, as the government suggests.").

In *Santos-Flores*, the Ninth Circuit thoroughly discussed this issue and stated that a district court's decision to detain a defendant "based on the possibility of his detention or removal by immigration authorities, therefore, is contrary to the express language of the Bail Reform Act." *Santos-Flores*, 794 F. 3d at 1091. Moreover, the government itself has discretion regarding the decision to prosecute or remove an individual. *Id.* If this Court orders release under the Bail Reform Act and the Executive Branch chooses to prioritize Mr. Medrano's removal over this prosecution, it is free to do so by dismissing this case and processing Mr. Medrano for removal. But the Executive cannot hold the courts and Mr. Medrano hostage over the prospect that it may make such a choice. *See United States v. Trujillo-Alvarez*, 900 F. Supp. 2d 1167, 1180 (D. Or. 2012) ("[I]f the Executive Branch chooses to forgo criminal prosecution of Mr. Alvarez-Trujillo on the pending charge of illegal reentry and deport him from the United States, as previously stated, there is nothing further for this Court to do.").

Regardless, the government's decision regarding removal is not an indicator of nonappearance under the Bail Reform Act; "as a number of district courts have persuasively explained, the risk of nonappearance referenced in 18 U.S.C. § 3142 must involve an element of volition." *Santos-Flores*, 794 F. 3d at 1091. If the government, by placing a defendant in immigration detention or removing him, jeopardizes the district court's ability to try him, then the district court may craft an appropriate remedy. *Id.* "The court may not, however, substitute a

12

categorical denial of bail for the individualized evaluation required by the Bail Reform Act." *Id.* at 1091–92.

Again, Magistrate Judge Miller carefully considered the government's arguments concerning Mr. Medrano's criminal history and the ICE detainer. Magistrate Judge Miller also referenced *Santos-Flores*. After considering the evidence and the law, Magistrate Judge Miller found the government's arguments insufficient to show that no conditions of release could reasonably assure Mr. Medrano's appearance, and ordered that Mr. Medrano be released pursuant to conditions. This conclusion is correct and consistent with the decisions of the courts cited above.

Notably, Magistrate Judge Miller imposed restrictive release conditions. Magistrate Judge Miller ordered that Mr. Medrano reside at his residence subject to electronic monitoring with a curfew. Because the government failed to carry its burden to show that no conditions of release could reasonably assure Mr. Medrano's appearance at trial, Magistrate Judge Miller did not err in following the command of the Bail Reform Act that Mr. Medrano be released pending trial.

After thoughtfully considering the evidence, argument, and law, Magistrate Judge Miller found that conditions of release would reasonably assure the appearance of Mr. Medrano and the safety of the community. So, he ordered that Mr. Medrano be released subject to electronic monitoring and curfew. Magistrate Judge Miller's finding and order are correct, and this Court should not revoke the release order. This Court should order that Mr. Medrano be released immediately.

**III. Prompt disposition of the government's motion is required by statute and especially important here where Mr. Medrano has repeatedly challenged his unlawful detention.**

By statute, motions seeking revocation of a detention order "shall be determined promptly." § 3145(b). The statute does not quantify this promptness requirement, but at least one case suggests

that two weeks can be too long to wait, and the Ninth Circuit has held that a 30-day delay violates the statute. *See United States v. Fernandez-Alfonso*, 813 F.2d 1571, 1571 (9th Cir. 1987) (holding that "thirty days was not prompt" under § 3145(b)); *United States v. Vallie*, No. C4-01-03, 2001 WL 627432, at *1 n. 2 (D.N.D. Apr. 12, 2001) (suggesting that waiting for trial judge to return from two-week vacation would violate § 3145's promptness requirement).

Mr. Medrano has been contesting his unlawful detention since his initial appearance on February 18, 2025. The government filed its motion to review and revoke the release order during the detention hearing on February 24, 2025. The defense has now responded. The defense respectfully requests that the matter be determined promptly in order to avoid any further unlawful detention.

## CONCLUSION

Mr. Medrano should have been released at his initial appearance when the government failed to show that there was a "serious risk" that Mr. Medrano will flee. He was detained for a week pending a detention hearing over the defense's objection. Then, after hearing the parties' evidence and argument at the detention hearing, Magistrate Judge Miller correctly found that conditions of release could reasonably assure the appearance of Mr. Medrano as required and the safety of the community. Mr. Medrano has strong ties to this community, a history of showing up for court proceedings, and his current pending custody litigation provides ample incentive for him to appear at court here. The Court should order that Mr. Medrano be released immediately pursuant to Magistrate Judge Miller's release order.

Respectfully submitted,

NOE MEDRANO NUNEZ

By:_____/s/_____

Michael L. Tagliabue
Texas State Bar No. 24138511

Andrew W. Grindrod
Virginia State Bar No. 83943

Assistant Federal Public Defenders
Office of the Federal Public Defender
500 East Main Street, Suite 500
Norfolk, Virginia 23510
(757) 457-0800
(757) 457-0880 (telefax)
michael_tagliabue@fd.org
andrew_grindrod@fd.org