**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA**

**Newport News Division**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>NOE MEDRANO NUNEZ<br><br>*Defendant.* | Case No. 4:25-CR-7 |

**GOVERNMENT'S SUPPLEMENTAL MOTION FOR REVOCATION OF RELEASE ORDER PURSUANT TO TITLE 18, UNITED STATES CODE, SECTION 3145**

The United States of America by and through its attorney Erik S. Siebert, United States Attorney for the Eastern District of Virginia, and Devon E.A. Heath, Assistant United States Attorney, moves this Court for Revocation of the Release Order of NOE MEDRANO NUNEZ ("defendant"). The United States also herein responds to the defendant's Response in Opposition to the previously filed motion of the United States for revocation of release. ECF No. 16.

**PROCEDURAL HISTORY**

On February 10, 2025, the defendant was charged in a single count indictment by a grand jury in the Eastern District of Virginia, Newport News Division. The defendant was charged with one count of Reentry of Removed Alien, in violation of 8 U.S.C. § 1326(a). ECF No. 1. This charge relates to the defendant illegally reentering the United States for, *at minimum, the sixth time*. A sentencing guideline estimate results in an advisory range of 33 – 31 months.

On February 10, 2024, an arrest warrant was issued for the defendant. ECF No. 3. The defendant was arrested and taken into federal custody by United States Immigration and Customs Enforcement ("ICE") on February 17, 2025, in Newport News, Virginia.

The defendant had his initial appearance before the honorable Magistrate Judge Robert J. Krask on February 18, 2025. At the initial appearance the United States moved for the defendant's detention pursuant to 18 U.S.C. § 3142(f)(2)(A), citing the defendant's numerous past criminal convictions, numerous past removals, and numerous past illegal reentry convictions. The court correctly found that the United States carried its burden and entered an order of temporary detention pending hearing pursuant to bail reform act. ECF No. 9. A detention hearing an arraignment were set for February 24, 2025.

Probation provided a pretrial services report to both parties. This report contained only the criminal history of the defendant and advised, "The Bureau of Immigration and Customs Enforcement (ICE) indicated the defendant was last deported on or about October 23, 2020. ICE records show that the defendant has no legal stating in the United States, and the prior Order of Removal has been reinstated, subjecting him to immediate deportation. Therefore, the defendant does not appear eligible for release on the alleged offense." ECF No. 11. No further information regarding the defendant was provided. No residence, no employer, no employer information, no information regarding time in the community, and no monthly income. The United States contacted the Probation Officer prior to the detention hearing and the Probation Officer advised that the defendant had not been and would not be interviewed, and no third party or residence had been and would not be vetted. Probation further advised that they would be present in court and available to answer any questions that may arise. As a result, nothing proffered by the defendant was verified or vetted by anyone.

On February 24, 2025, a detention hearing was held before the honorable Magistrate Judge Douglas E. Miller. Evidence was heard by way of proffer, and argument was made by both parties. For reasons stated on the record, the court granted the defendant's release with conditions,

including a return to his Hampton residence, and electronic monitoring with a nightly curfew. The United States immediately made an oral motion and filed a written motion to Review the Release Order and Stay Release Pending Review. ECF No. 14. The court entered an Order that stayed the defendant's release pending *de novo* review by this Court. ECF No. 15.

## **FACTUAL BACKGROUND**

In terms of the factual background of this matter, the United States will rely on and incorporate the information presented at the detention hearing on February 24, 2025[1], but also offers the following information. The defendant is a native and citizen of Mexico with multiple criminal convictions and removals.

The defendant was first ordered removed by an immigration judge within Dallas, Texas on March 30, 2000. On June 1, 2000, he was removed to Mexico by way of Laredo, Texas. On October 1, 2001, the defendant was encountered and arrested by immigration officials and issued a Reinstatement within Huntsville, Texas. On March 2, 2002, he was removed to Mexico by was of Laredo, Texas. On April 15, 2002, the defendant was encountered and arrested by immigration officials and issued a Reinstatement within Laredo, Texas. On December 3, 2003, he was removed by way of El Paso, Texas. On September 13, 2013, the defendant was encountered and arrested by immigration officials and issued a reinstatement within Norfolk, Virginia. On July 21, 2015, He was removed to Mexico by way of Laredo, Texas. On August 6, 2015, the defendant was encountered and arrested by immigration officials and issued a reinstatement within Birmingham, Alabama. On March 13, 2017, he was removed to Mexico by way of Alexandria, Louisiana. On February 19, 2019, the defendant was encountered and arrested by immigration officials and issued

---

[1] The transcript has been ordered and will be provided to the Court.

a reinstatement within Norfolk, Virginia. On October 23, 2020, he was removed to Mexico by way of Brownsville, Texas. On September 11, 2024, the defendant's presence within the United States was verified by way of biometric data submitted to the Unite States Citizenship and Immigration Service (USCIS). The defendant was processed as a reinstatement case by Enforcement and Removal Operations (ERO), and it was determined that he would be held in custody until his removal from the United States. However, further investigation revealed a pending matter open with USCIS that resulted in no ICE detainer being in place until the resolution of the matter. If the matter is resolved in a declination, which is more probable than not, the defendant will be immediately picked up by ICE and the removal process will proceed resulting in his immediate deportation regardless of any pending prosecutorial matters.

While illegally being in the United States the defendant has been convicted of the following felony offenses in more than one jurisdiction: March 4, 2000 – Dallas, Texas – Carrying a Weapon on Alcohol Premises (sentenced to 24 months); March 1, 2001 – Dallas, Texas – Unauthorized use of a Vehicle (sentenced to 12 months); May 15, 2001 – Dallas, Texas – Unlawful Carry of Weapon (sentenced to 24 months); Mach 7, 2002 – Laredo, Texas – Illegal Re-Entry (sentenced to 24 months); September 24, 2013 – Newport News, Virginia – Unauthorized Use of a Vehicle (sentenced to 12 months); March 10, 2014 – Eastern District of Virginia – Illegal Re-Entry (sentenced to 24 months); February 8, 2016 – Northern District of Alabama – Illegal Re-Entry (21 months); and July 31, 2019 – Eastern District of Virginia – Illegal Re-Entry (sentenced to 21 months). The defendant has been convicted of the following misdemeanors: 2009 – New Kent, Virginia – No Driver's License; May 2009 – Norfolk, Virginia – No Driver's License; January 24, 2011 – Newport News, Virginia – Driving under Revocation or Suspension; and September 2011 – Christiansburg, Virginia – Driving Under Revocation or Suspension, Reckless

Driving. Additionally, the defendant was charged with the following offenses: 1993 – Irving, Texas – Burglary (disposition unknown); 1994 – Irving, Texas – Driving While Intoxicated (Disposition Unknown); 1994, Dallas, Texas – Criminal Mischief (Disposition Unknown); 1995 – Irving Texas – Burglary of a Motor Vehicle (Disposition Unknown); 1999 – Irving, Texas – Auto Theft (Release without Prosecution); 1999 – Irving Texas – Public Intoxication (Disposition Unknown), and 2018 – Virginia Beach, Virginia – Failure to Appear (Dismissed). Furthermore, the defendant's probation was revoked as a result of his March 2001 arrest, Unauthorized Use of a Motor Vehicle in Dallas, Texas, and then the defendant violated his terms of supervised release when he reentered the United States on August 15, 2015.

## ARGUMENT

### I. A DETENTION HEARING WAS APPROPRIATE BECAUSE THE UNITED STATES HAD SHOWN THE DEFENDANT PRESENTED A SERIOUS RISK OF FLIGHT

Federal law holds that "the judicial officer shall hold a hearing to determine whether any conditions or combination of conditions…will reasonably assure…the safety of any other person and the community – upon motion of the attorney for the Government…in a case, that involves…a serious risk that the person will flee." 18 U.S.C. § 3142(f)(2)(A). This is a two-step inquiry: first, whether the Government has a basis to request a detention hearing; and second, whether the § 3142(g) factors support detention. *United States v. Aleman-Duarte*, 2020 WL 236870, *4–5 (E.D. Tenn. Jan. 15, 2020).

Courts detain defendants under the Bail Reform Act on government motions and a showing that the defendant poses a risk of flight even when there is an immigration detainer lodged against that defendant, particularly when there is a basis to find a risk of flight that goes beyond simply the defendant's status as an alien in the United States. In both *United States v. Aleman-Duarte*,

5

3:19-cr-149, 2020 WL 236870, at *2–4 (E.D. Tenn. Jan. 15, 2020), and *United States v. Silvestre-Gregorio*, 2:18-cr-155, Doc. No. 61 (E.D. Tenn. June 21, 2019), judges in the Eastern District of Tennessee detained a defendant who was subject to an immigration detainer on the government's motion under § 3142(f)(2)(A), notwithstanding *United States v. Mendoza-Balleza*, 420 F.Supp.3d 716 (E.D. Tenn. 2019). In *Mendoza-Balleza*, the government relied only the immigration detainer for proof of the defendant's flight risk and conceded that the defendant did not pose a serious risk of flight. 420 F.Supp.3d at 718. Given that concession, the district court found that the government could not satisfy its threshold burden. *Id*. Here, the United States did not only rely on the immigration status/detainer for proof of the defendant's flight risk. We relied on that and the defendant's criminal history which showed an individual who clearly is not abiding by the laws of the United States and court orders.

The existence of an immigration detainer or illegal alien status is not a per se ground to detain or release under § 3142. *See United States v. Veloz-Alonso*, 910 F.3d 266, 270 (6th Cir. 2018) ("[T]he district court correctly found that deportable aliens are not per se ineligible for bail[.]"); *see also United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019) ("[J]ust as an immigration detainer cannot support the categorial denial of bail, neither can an immigration detainer support the categorial grant of bail."); *United States v. Silvestre-Gregorio*, 2:18-cr-155, Doc. No. 61 (E.D. Tenn. June 21, 2019) ("An ICE detainer is but a factor in the analysis. It is not dispositive. It neither mandates release nor compels detention."); *United States v. Reyes-Arguello*, 426 F.Supp.3d 408, 409 (E.D. Ky. 2019) ("Nowhere in the BRA does it state that a defendant with an ICE detainer is not entitled to a hearing."). The Ninth Circuit has gone further, holding that immigration detainers are not a factor in the individualized determination under § 3142 and rejecting the defendant's argument that immigration detainers eliminate any risk of flight. *Diaz-*

*Hernandez*, 943 F.3d at 1198–99 (citing *United States v. Santos-Flores*, 794 F.3d 1088 (9th Cir. 2015) and affirming detention because factors other than the immigration detainer supported finding defendant posed flight risk). To be sure, courts across the country have rejected the government's detention arguments when the government's only proof of flight risk is the presence of an immigration detainer. *United States v. Ailon-Ailon*, 875 F.3d 1334 (10th Cir. 2017); *Mendoza-Balleza*, 420 F.Supp.3d 716 (E.D. Tenn.); *United States v. Barrera-Omana*, 638 F.Supp.2d 1108 (D. Minn. 2009). But here, the government's showing of the defendant's risk of flight does not rely on the presence of the immigration detainer, making *Aleman-Duarte* and *Silvestre-Gregorio* more relevant here than *Mendoza-Balleza*. Like this case, the government in both *Aleman-Duarte* and *Silvestre-Gregorio* argued that the defendants were serious risks of flight based on factors unrelated to the immigration detainer lodged against the defendant. *Aleman-Duarte*, 2020 WL 236870 at *3; *Silvestre-Gregorio*, 2:18-cr-155, Doc. No. 61, at 7. In *Aleman-Duarte*, the court found that the defendant was a serious flight risk because (1) the defendant's return to this country, despite his prior removal, indicates a disregard for the immigration court's removal order and suggests that he would not abide by the requirement that he appear in court and (2) the use of aliases strongly suggests a risk of flight. 2020 WL 236870 at *4. In *Silvestre-Gregorio*, the court found that the defendant was a serious flight risk because (1) he has attempted to evade detection for the 17 years that he was present in the United States; (2) when he was arrested, he provided fake names; and (3) deportation is only avoidable if he flees. 2:18-cr-155, Doc. No. 61 at 5.

      Here, the Defendant is a serious risk of flight, notwithstanding his immigration status. Since at least 1993, he has been in at least two cities in Texas, five cities in Virginia, and Alabama. This is simply known based upon his numerous contacts with law enforcement in every one of

7

those places. He has multiple convictions for driving without a license, which is a simple rule to follow, and *six* prior removal orders that he has simply continued to ignore time and time again. He has committed multiple felonies unrelated to immigration in multiple jurisdictions for which he was convicted. Further, he is currently unlawfully present in the United States, having returned to this country for at least the sixth time after deportation, further indicating a disregard for the authority of the United States and its laws, and faces a criminal charge, based on this reentry, that carries a maximum term of imprisonment of well over any sentence he has previously served. His choice to illegally return time and time again shows that he prioritizes being in the United States above all else, and his choice to be unlawfully present in the United States renders him deportable. *See Aleman-Duarte*, 2020 WL 236870, *4. Taken together, this suggests that the defendant has strong incentive to flee and avoid both criminal and immigration consequences.

Accordingly, the court was correct in finding that the Defendant posed a risk of flight and thus a more fulsome detention hearing was appropriate.

## II.   THE RELEASE ORDER ENTERED BY THE MAGISTRATE COURT SHOULD BE REVOKED

The United States may seek review by a district court of a magistrate judge's order releasing a defendant. 18 U.S.C. § 3145(a)(1). The district court reviews de novo the magistrate judge's order of release. *See United States v. Clark*, 865 F.2d 1433, 1437 (4th Cir. 1989).

In determining whether pretrial detention is appropriate, a court must determine whether there are conditions of release that will reasonably assure the appearance of the defendant at trial and the safety of any other person and the community. 18 U.S.C. § 3142(g). When risk of flight serves as the basis for detention, "the government must prove by a preponderance of the evidence that no combination of conditions will reasonably assure the defendant's presence at future court

proceedings." *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001) (per curiam) (citing *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985). In doing so, the court must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including family ties, the person's character, ties to the community, and criminal history; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g).

The United States submits that there is no condition or combination of conditions that will reasonably assure the defendant's appearance in court if he is released.

**A.     The Nature and Circumstances of the Charged Offense**

The nature and circumstances of this offense demonstrate defendant's serious risk of flight. The charged offense, by its nature, poses a particularly strong incentive to commit voluntary flight. And, in this particular case, the defendant has a clear, documented history of illegally reentering the country time and time again after being lawfully removed. The defendant has reentered the country illegally not once, twice or even three times, but *six*. The reason we found him this time was due to a tip that was received by Homeland Security Investigations (HSI).

The defendant clearly has a strong desire to remain in the United States, as evidenced by numerous illegal reentries and the ongoing custody battle over his son, whom by the defendant's own words is "what he lives for." The defendant is currently in an ongoing child custody battle that will remain unresolved well past the trial scheduled for April 29, 2025, in this matter. ECF 16 at 8 – 9. The defendant's four prior federal convictions in three different districts makes clear that the defendant understands that the only likely result from appearing in court is another removal from the United States to Mexico preceded by a highly probable term of incarceration. The idea

9

that he would not flee if released defies common sense given his history of ignoring laws, prior orders, what he has to lose, to include the custody of his son, and his strong desire to remain in the United States.

Furthermore, U.S. Immigration and Customs Enforcement ("ICE"), recognizing the defendant's risk of flight, would have filed an immigration detainer with the U.S. Marshals upon the defendant's arrest but for his pending matter with USCIS. Thus, if the release order is not overturned, the defendant will be on bond until the likely unfavorable resolution of his pending matter, at which time ICE will seek to find him, detain him and initiate the removal proceedings. In that event, there is no combination of conditions that will reasonably assure his appearance in this judicial proceeding because of the high likelihood that he would be deported before this criminal matter is resolved. *See United States v. Ramirez-Hernandez*, 910 F. Supp. 2d 1155, 1158–59 (N.D. Iowa 2012) (citing the "certainty of removal" of defendants who would be immediately taken into ICE custody and promptly removed to their home country in concluding that there were no conditions of release under § 3142(c) that "would 'reasonably assure' the defendants' appearance at trial" on unlawful-reentry charges); *United States v. Ong*, 762 F. Supp. 2d 1353, 1363 (N.D. Ga. 2010) (citing the defendant's unlawful presence in the United States, lack of ties to the United States, and evidence that he "would likely be removed from the United States and not allowed to re-enter," in concluding that there were no combination of conditions of release that would reasonably assure his appearance at trial).

Further, any consequent removal proceedings by ICE would essentially preclude the United States from being able to prosecute this illegal reentry offense. Although not determinative of whether an individual is a risk of flight, the existence of an ICE detainer, or in this case the potential of future ICE detention, is a factor to be considered in incentivizing an individual, like

the defendant, to flee. *See United States v. Coreas-Batres*, 2018 WL 10561963, at *2 (E.D.N.C. Dec. 4, 2018); *see also United States v. Attia*, 2020 WL 2615725, *3 (D. Md. May 22, 2020) (Grimm, J.) ("Although the ICE detainer is not dispositive, it is relevant to the analysis under the Bail Reform Act.").

But for the defendant's pending matter with USCIS, the defendant would be detained by ICE if given a bond. This could change at any time resulting in his imminent removal given him time, out of custody to flee. The defendant has continuously ignored *six* lawful orders to not return to the United States. The defendant also clearly wants to be in the United States. Furthermore, the defendant clearly wants custody of his child which he will not get if convicted or deported prior to the custody resolution, which is *highly* probable. These conditions carry a high risk of nonappearance in court and favor pretrial detention.

**B.     The Weight of the Evidence Against the Defendant**

The weight of the evidence in this case is strong and favors detention. On or about September 11, 2024, the defendant was fingerprinted, and the data was submitted to USCIS in regard to another matter. Those fingerprints returned as a match to the fingerprints on the defendant's Form I-205, Warrant of Removal, which was executed by a deportation officer on the date of his removal to Mexico.

The defendant's A-file lacks evidence of any immigration benefits, documents, or status that would have allowed him to enter the United States or remain here lawfully. Neither the Attorney General nor the Secretary of the Department of Homeland Security have given their permission to the defendant to re-enter the United States at any time before or since his removal. The strength of evidence supports a finding of pretrial detention.

C.     **The History and Characteristics of the Defendant**

       1.     **Criminal History**

The defendant's criminal history is extensive and laid out *infra*. Notably, he has four prior felony convictions for illegal reentry in three districts, plus additional non immigration related felony convictions and misdemeanors in multiple cities in multiple states. This criminal history, including his successful *six* illegal re-entries into the United States after removals, evidence his unwillingness to comply with the law and weigh in favor of detention pending trial.

Although the defendant has no apparent record of failing to appear or attempting to flee during the prosecution of his past criminal charges, courts have recognized that the risk of flight is simply greater in a felony proceeding involving potential deportation. *See, e.g.*, *United States v. Coreas-Batres*, 2018 WL 10561963, at *2 (E.D.N.C. Dec. 4, 2018) (granting motion to revoke release order and noting that "[a]lthough defendant previously appeared in state court for a misdemeanor charge, he currently stands charged with a felony and the weight of the evidence against him is strong.").

       2.     **Character**

The defendant is a Mexican citizen with no legal right to enter the United States. At each and every one of his six prior removals, the defendant was advised that returning to the United States without lawful permission is a federal offense and could result in a prison sentence. Undeterred, he made the conscious decision to violate federal law and return to the United States. Even further undeterred by serving multiple year plus sentences, he still decided to break the law and reenter the United States for the charge before the Court now. The defendant argues that this serves as a factor to weigh in favor of release, his desire to be here is so strong, he will break the

law. The United States respectfully disagrees and recommends this Court reject that argument. Furthermore, in nearly every instance of returning to the United States illegally, he broke United States laws while illegally present here.

### 3. Family and Community Ties

The defendant's son and mother of his child reside in the United States. However, given the real threat of deportation, the only way the defendant could continue to fight for custody and be present in court, present in his son's life in the United States is by failing to appear in court and remaining in the country illegally. He has already made it clear that he will risk deportation, imprisonment, and additional felony convictions to remain in the United States.

The defendant's history and characteristics, including his criminal convictions, and strong family ties in the United States, suggest a risk of nonappearance at further proceedings and weigh in favor of detention.

**D.   The Nature and Seriousness of the Danger to Any Person or the Community**

Although the defendant makes much of the age of his non immigration related convictions (nearly all were prior to his last deportation), the Court should take into account that the defendant has not continually resided in this country, and it is unknown what crimes he may have committed elsewhere. What we do know is that law enforcement's attention has been time and time again called back to him after he illegally reentered this country because he was breaking the law.

### CONCLUSION

An individualized review of the Section 3142(g) factors strongly favors detention. The defendant's illegal conduct is pervasive and long-standing. The defendant has also proven that not even convictions and terms of imprisonment have deterred him from breaking the law in the very manner that is before this Court. The Section 3142(g) factors themselves, even absent any potential

13

ICE detention, favor pretrial detention. The Government has met its burden to show by a preponderance of the evidence that the defendant is a flight risk and that no condition or combination of conditions that would reasonably ensure his appearance in court if he were to be released. The United States respectfully requests that the Court revoke the order of release and detain the defendant pending trial.

        Respectfully submitted,

        ERIK S. SIEBERT
        United States Attorney

By:       /s/
        Devon E.A. Heath
        Assistant United States Attorney
        United States Attorney's Office
        One City Center
        11815 Fountain Way, Suite 200
        Newport News, Virginia 23606
        Phone: 757-591-4000
        Email: devon.alston@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on February 28, 2025, I electronically filed a copy of the foregoing document with the Clerk of Court through the CM/ECF system, which will cause a copy to be served upon all counsel of record.

/s/
Devon E.A. Heath
Assistant United States Attorney
United States Attorney's Office
One City Center
11815 Fountain Way, Suite 200
Newport News, Virginia 23606
Phone: 757-591-4000
Email: devon.alston@usdoj.gov